UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———

JOHN RAMSEY, II,

                Plaintiff,                     Case No. 2:11-cv-307

v.                                           Honorable Gordon J. Quist

UNKNOWN McMAHON et al.,

                Defendants.

_____/

## OPINION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff is incarcerated in the Chippewa Correctional Facility.  In his *pro se* complaint, Plaintiff sues Dr. (Unknown) McMahon, Acting Health Unit Manager Melissa LaPlaunt, Warden Greg McQuiggin, Step I Grievance Respondent Kevin Rourk and an unknown party named as the Step III Grievance Respondent.

On April 19, 2011, Dr. McMahon was extracting some of Plaintiff's upper teeth when an instrument slipped and stabbed the inside of Plaintiff's right cheek, causing pain and swelling. Dr. McMahon put a stitch in Plaintiff's cheek to close the injury.  Plaintiff alleges that he complained to Defendant LaPlaunt that the pain medication provided by Dr. McMahon following the procedure was not sufficient, but LaPlaunt told Plaintiff that McMahon would not increase the dose or change the medication.  Plaintiff filed a Step I grievance against Defendants McMahon and LaPlaunt the same day.  In response to Plaintiff's grievance, Defendant Rourk wrote on April 22, 2011, that Plaintiff had been seen that day and reported that his cheek was "ten times better." (Grievance No. URF 1104-1352-12A3, Step I Response, docket #1-1, Page ID#14.)   Rourk continued, "Exam reveals healing minor cheek laceration on right side.  Explained that instrument can slip during difficult extractions and was certainly not intentional . . . ." (*Id.*)

In addition to his grievance, Plaintiff sent a kite to Defendant McQuiggin's office complaining about his injury.  The response from Defendant LaPlaunt dated April 26, 2011, stated in part:

> On April 19, 2011 the oral surgeon was extracting some teeth from you.  You were informed of the procedure and risks prior to and your consent was obtained on the appropriate consent form.  During the procedure, the surgeon inadvertently made a single puncture to your cheek which required one stitch.  You were informed of this and proper documentation was completed.  Ultram was ordered to treat your pain by the surgeon as well.  The oral surgeon was contacted later that day regarding your

request for additional pain medication.  The instruction was for the patient to add Tylenol along with the Ultram.  Ice packs were also ordered.

You were rechecked by nursing staff on April 20, 2011.  The documentation indicates mild swelling of the right cheek and no other signs of infection of abnormality.  The puncture was secured with a single suture which was healing without incident.  On April 25, 2011, it is documented the puncture is completely healed and you indicated the pain had greatly improved.

(Warden's Correspondent Response, docket #1-1, Page ID#15.)

Plaintiff vehemently denies that he told Rourk or anyone else that his cheek was much better and contends that Rourk and the other grievance respondents were acting together to cover up the "technical assault and battery" committed by Dr. McMahon.

## Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S. Ct. at

1949 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff appears to sue Defendant Warden McQuiggin by virtue of his supervisory role at the facility and for denying Plaintiff's Step II grievance appeal.  Plaintiff also sues Defendant Rourk, the Step I Grievance Respondent and the unknown Step III Grievance Respondent, for denying his grievance. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310

- 4 -

F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 129 S. Ct. at 1948.  Plaintiff has failed to allege that Defendants McQuiggin, Rourk or the unknown Step III Grievance Respondent engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against them.

        To the extent Plaintiff contends that the Defendant grievance respondents conspired to cover up for the alleged wrongdoing of Defendants McMahon and LaPlaunt, his claim is without merit.  To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).  A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right.  *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988).  "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996).  A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. State of Mich.,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).  Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them.

- 5 -

Because Plaintiff makes no more than conclusory allegations that Defendants denied his grievance to cover up for the wrongful actions of Defendants McMahon and LaPlaunt, he fails to state a claim.

Plaintiff contends that Defendants McMahon and LaPlaunt failed to provide him with proper medical treatment in violation of his Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867

(6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  Deliberate indifference "entails something more

than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts

or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id.*

Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment

states a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105.  As the Supreme Court

explained:

> [A]n inadvertent failure to provide adequate medical care cannot be
> said to constitute an unnecessary and wanton infliction of pain or to
> be repugnant to the conscience of mankind.  Thus, a complaint that a
> physician has been negligent in diagnosing or treating a medical
> condition does not state a valid claim of medical mistreatment under
> the Eighth Amendment.  Medical malpractice does not become a
> constitutional violation merely because the victim is a prisoner.  In
> order to state a cognizable claim, a prisoner must allege acts or
> omissions sufficiently harmful to evidence deliberate indifference to
> serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted).  Thus, differences in judgment between an inmate

and prison medical personnel regarding the appropriate medical diagnoses or treatment are not

enough to state a deliberate indifference claim.  *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir.

1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so

even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.

*Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).  Moreover,

"[a]n accident, although it may produce added anguish, is not on that basis alone to be characterized

as wanton infliction of unnecessary pain."  *Estelle*, 429 U.S. at 291.

Plaintiff's allegations against Dr. McMahon fall far short of the deliberate indifference standard.  It is undisputed that the injury to Plaintiff's cheek was an accident, not the result of an intentional act to inflict harm on Plaintiff.  At most, Dr. McMahon was negligent when his instrument inadvertently slipped and punctured the inside of Plaintiff cheek.  As stated above, a claim of medical negligence is inadequate to support an Eighth Amendment claim.  *See Farmer*, 511 U.S. at 835; *Blackmore*, 390 F.3d at 895.  Furthermore, a claim of assault and battery is grounded in state tort law, and, thus, is not actionable under § 1983.  *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (Section 1983 does not provide redress for a violation of a state law.)

Moreover, Defendants LaPlaunt and McMahon were not deliberately indifferent to Plaintiff's pain.  Dr. McMahon prescribed Ultram for Plaintiff's pain, and after Plaintiff complained that it was not sufficient, Dr. McMahon indicated that Plaintiff also could take Tylenol.  Ice packs also were ordered to help reduce Plaintiff's pain and swelling.  The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006).  In light of the medication Plaintiff received and the relatively minor injury to Plaintiff's cheek, Plaintiff's dispute over the adequacy of the treatment fails to rise to the level of an Eighth Amendment claim.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  September 30, 2011                            /s/ Gordon J. Quist
                                                        GORDON J. QUIST
                                                UNITED STATES DISTRICT JUDGE

- 9 -